UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven L. Lentz,　　　　　　　　　　　　　　　　　Case No. 16-cv-530

　　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION

Cori Smith, et al.,

　　　　　　Defendants

## I.　INTRODUCTION

Before me are: (1) Plaintiff Steven L. Lentz's motion for appointment of counsel (Doc. No. 3) with opposition by Defendants (Doc. No. 15); (2) Defendants' motion to dismiss (Doc. No. 14) with opposition by Plaintiff (Doc. No. 17); and (3) Plaintiff's "Motion for Ruling on Request for Default Judgment" (Doc. No. 19) with opposition by Defendants (Doc. No. 20) and reply by Plaintiff. (Doc. No. 23). Pursuant to Magistrate Judge James R. Knepp, II's order granting Lentz's motion, Lentz is proceeding *in forma pauperis*. (Doc. No. 4).

## II.　BACKGROUND

Plaintiff Steven L. Lentz is a prisoner at Allen Oakwood Correctional Institution in the custody of the Ohio Department of Rehabilitation and Correction. (Doc. No. 1 at 1). On March 28, 2015, Block Officer Don Schneider issued a conduct report, charging Lentz with possession of contraband in violation of the Ohio Administrative Code. *Id.* at 2. The matter was referred to the Rules Infraction Board ("RIB") on March 30, 2015, by Defendant Sergeant Cameron Smith. *Id.* On April 15, 2015, Lentz was called to the shift office where Lentz alleges Sergeant Cameron Smith informed Lentz that Defendant Greta Callahan, Chairperson of the RIB, ordered Officer Schneider to re-write the conduct report initially written on March 28, 2015. *Id.* The next day, Lentz filed a

Notification of Grievance against Callahan based upon her alleged instruction to re-write the report. *Id.* at 3.

On April 17, 2015, a hearing was held before the RIB regarding Lentz's conduct violation. *Id.* The RIB, composed of Callahan and Defendant Cori Smith, found Lentz guilty of the violation and sanctioned him to ten days in cell isolation. *Id.* Lentz appealed the RIB's decision, but the appeal did not reach the Warden's Office until April 22, 2015, five days into his sentence of cell isolation. *Id.* The Warden reversed the RIB's decision the same day citing "procedural errors and violation of inmate rights" and ending the sanction on that date. (Doc. No. 1-2). Lentz alleges he was not informed of the reversal until April 28, 2015, the day after he was released from serving the full ten-day sanction. (Doc. No. 1 at 3).

The Institutional Inspector overruled Lentz's Grievance on May 4, 2015, finding insufficient evidence to support his claim of "Inappropriate Supervision." The Disposition of Grievance also noted that the procedural errors related to the RIB had already been remedied by the Warden's Office's decision on appeal because the "case was reversed and removed from [his] record." (Doc. No. 1-3). Lentz appealed this decision, but it was ultimately affirmed on the highest level. (Doc. No. 1 at 4).

III.  MOTION FOR RULING ON REQUEST FOR DEFAULT JUDGMENT

Default must be entered by the clerk of court if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Lentz applied to the clerk for default against all Defendants on June 29, 2016. (Doc. No. 9). But, the day before his application was filed, Defendants moved for an extension of time to file the answer. (Doc. No. 8). I granted the motion, extending the time to file an answer to July 15, 2017. (Doc. No. 10). Defendants filed the answer on July 12, 2016, three days before the extended deadline. (Doc. No. 13). Since Defendants

2

complied with the extended deadline set by the court in defending against Lentz's claims, default is not appropriate and Lentz's motion for default judgment is denied. (Doc. No. 19).

To briefly address Lentz's concern regarding the receipt of file-stamped documents from the clerk of court, it is the policy of the clerk of court to return a file-stamped copy of filings *only when* the litigant encloses an additional copy of the document and a self-addressed envelope with pre-paid postage in the filing. Document Numbers 1, 2, 3, 9, and 12 referred to in his July 2016 letter, are all filings by Lentz, of which he would not receive a file-stamped copy unless he had enclosed an additional copy and self-addressed envelope with pre-paid postage. (Doc. No. 19-1 at 1). With respect to the remaining documents, the clerk of courts generally does not to send a copy of the Original Summons issued to the U.S. Marshalls. (Doc. No. 5). Additionally, Return of Service documents are sent by the U.S. Marshalls after service has been perfected, not the clerk of courts. (Doc. Nos. 6, 7).

IV. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts

3

to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, I am cognizant that Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). I "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980). But pro se pleadings must "alert party defendants that they may be individually responsible in damages. The trial and appellate courts should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A simple "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678.

In the complaint, Lentz states this is a § 1983 civil action to redress due process violations. Lentz claims he was deprived of a hearing before the RIB within seven business days of the issuance of a conduct report, as required by Ohio Administrative Code 5120-9-08(C). Instead, the hearing was conducted 15 business days after the initial conduct report was issued, but within seven business

4

days of the time Defendant Callahan allegedly ordered the conduct report be re-written. Lentz alleges Defendants' actions in delaying the hearing violated his procedural due process rights.

The Fourteenth Amendment provides, "[n]o State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To state a procedural due process claim under § 1983, Lentz must first meet "the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Here, Lentz objects to Defendants contention that he did not state a liberty interest of which he was deprived. He claims to have a liberty interest in having a hearing before the RIB within seven business days, absent extraordinary circumstances, after the issuance of a conduct report. (Doc. No. 17 at 5).

Prison regulations "are not set forth solely to benefit the prisoner," but also "to instruct subordinate employees how to exercise discretion vested by the State in the warden, and to confine the authority of prison personnel in order to avoid widely different treatment of similar incidents." *Sandin v. Connor*, 515 U.S. 472, 482 (1995); *see also State ex. rel. Larkins v. Wilkinson*, 79 Ohio St. 3d 477, 479 (1997). Because state prison regulations serve this dual purpose, not all create a liberty interest protected by the Due Process Clause. *Sandin*, 515 U.S. at 483-84. The question of whether a liberty interest has been created depends on the "nature of the deprivation" rather than the language of the prison regulation. *Id.*; *see also State ex. rel. Larkins*, 79 Ohio St. 3d at 479 (quoting *State ex rel. Smith v. Barnell*, 109 Ohio St. 246, 258 (1924)) (stating that a "seemingly mandatory time limitation[ ]" in a prison regulation codified in the OAC "imposed merely with a view to the prompt and orderly conduct of business, are directory and not mandatory."). Departing from previous holdings that mandatory language in prison regulations *alone* created liberty interests, the *Sandin* court reasoned that this approach had produced "undesirable effects." *Id.* The practice of parsing the language of prison regulations not only discouraged states from codifying regulations that may be interpreted as creating liberty interests, but also interfered with the "deference and flexibility" owed

5

by federal courts "to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482. To address these policy concerns, state-created Due Process Clause liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, … nonetheless impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Ohio Administrative Code Section 5120-9-08(C) states, "The hearing of the rule infraction shall be held withing [sic] seven business days of the issuance of the conduct report unless prevented by exceptional circumstances, unavoidable delays or reasonable postponements. Delays beyond seven days shall be documented in the record along with the reason for the delay." As discussed above, it is not the mandatory "shall" language that governs the liberty interest analysis, but instead whether the failure to conduct a hearing within seven business days imposed an "atypical and significant hardship" or had a negative impact on Lentz's sentence. Lentz asserts neither. In fact, an RIB hearing on the conduct violation was held fifteen business days after the initial report had been issued. Lentz was found guilty of the conduct violation, but, due to "procedural errors and violation of inmate rights," the conduct violation was reversed on appeal and removed from his record. (Doc. No. 1-2). Regardless of the cause for the delay, the failure to conduct an RIB hearing within requisite seven business days did not deprive Lentz of the right to a hearing altogether. In fact, because of the procedural error, the conduct violation that may have had an effect with respect to parole was removed from his record. Since Lentz's fails to state any "atypical and significant hardship" imposed by the delay in holding the hearing, I do not find this to be a plausible liberty interest secured by the Due Process Clause.

Though Lentz only contends he had a liberty interest in the timely hearing, he briefly refers to the sanction of ten days in cell isolation and the delay in releasing him from that sanction after the case was reversed on appeal in his reply to the motion to dismiss. With respect to the sanction itself,

6

courts consider "the nature of the more-restrictive confinement *and* its duration in determining whether it imposes an 'atypical and significant hardship.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) (emphasis in original); *see, e.g.*, *Sandin*, 515 U.S. at 486 (finding a thirty-day period of "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Because Lentz was confined to cell isolation for only ten days, I do not find this to be an "atypical and significant hardship." Additionally, though Lentz did serve the entire ten-day sanction before receiving notice that the sanction had been lifted midway through, I do not find this to amount to an "atypical and significant hardship." *See, e.g.*, *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied* 522 U.S. 848 (1997) (holding a 117-day delay in returning an inmate to general population after release from administrative segregation was not an "atypical and significant hardship," citing to the discretion and flexibility owed to prisons to manage the day-to-day operations). Accordingly, Lentz has failed to state a liberty interest protected by the Due Process Clause and the claim must be dismissed. Since Lentz has failed to state a claim for which relief may be granted, the defenses related to qualified immunity, Eleventh Amendment sovereign immunity, and *respondeat superior* do not apply.

## V. CONCLUSION

For the foregoing reasons, Lentz's "Motion for Ruling on Request for Default Judgment" is denied. (Doc. No. 19). Defendants' motion to dismiss for failure to state a claim is granted. (Doc. No. 14). Since this case is dismissed in its entirety, Lentz's motion for appointment of counsel is denied as moot. (Doc. No. 3). Additionally, as an *in forma pauperis* action, I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge